IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Nathan D. Crisp,

        Plaintiff,

                        Case No. 1:22-cv-2057-MLB

v.

The State of Georgia, et al.,

        Defendants.

_____/

**OPINION & ORDER**

Plaintiff has filed multiple lawsuits against Defendants and other state and federal officials complaining about his arrest and guilty plea for impersonating an officer. In each of his lawsuits—this one included—Plaintiff seeks to overturn his plea and obtain a new trial. He claims Defendants violated his constitutional rights and engaged in an "ex post facto" conspiracy to violate his state, federal, and international rights. Defendants—in four separate motions—have moved to dismiss. (Dkts. 18, 19, 23, 37.) Plaintiff—also in four separate motions—moves to amend his complaint. (Dkts. 33, 63, 78, 80.) The Court denies Plaintiff's motions and dismisses this lawsuit.

## I. Background

In 2019, Plaintiff pled guilty to impersonating an officer in violation of Georgia law. (Dkt. 1 at 15, 90–99.) While his allegations are difficult to unravel, it appears Plaintiff complains that various state, county, and federal officials violated a host of state, federal, and international law as part of an "ex post facto" conspiracy related to his arrest and conviction. (*See generally* Dkts. 1, 16.) Plaintiff raised these same allegations in a prior case. (*See Crisp v. State of Georgia et al.*, No. 1:21-cv-175.) This time, he adds new purported participants to the alleged conspiracy and drops others.

## II. Motions to Dismiss

Plaintiff's complaint and amended complaint—which consist of over 200 pages—mention the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution; a host of state criminal laws; federal laws including 42 U.S.C. §§ 1983, 1985, and 1986, 18 U.S.C. §§ 2, 3, 4, 241, and 242, and the Civil Rights Act of 1871; and a slew of state laws. (*See generally* Dkts. 1, 16-1.) He specifically brings state law claims for abusive litigation, defamation and libel, fraud, and for violations of the Georgia RICO Act. (Dkt. 1 at 37, 59–62.)

Defendants raise various defenses in their separate motions to dismiss. (Dkts. 18, 19, 23, 37.)  The Court addresses each.

### A.  The State Defendants

Defendants State of Georgia and assistant attorney general James Champlin say Plaintiff's claims against them must be dismissed because they are entitled to Eleventh Amendment immunity and absolute immunity.  They also say the Georgia Tort Claims Act bars Plaintiff's claims because it provides them immunity and because Plaintiff did not comply with the statute's procedural requirements.

#### 1.  Eleventh Amendment Immunity

The Eleventh Amendment bars suit against a state or one of its agencies, departments, or officials when the state is the real party in interest or when any monetary recovery would be paid from state funds. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97–102 (1984).  Eleventh Amendment immunity applies to both states and entities that are considered "arms of the state." *McBride v. Bd. of Corrections*, 472 S.E.2d 693, 694–95 (Ga. Ct. App. 1996) (quoting *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 59 (1989)).  There are three exceptions to this rule:

(1) congressional override, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996); (2) waiver by the state, *see College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999); and (3) a suit against a state officer for "prospective injunctive relief in order to end a continuing violation of federal law," *Seminole Tribe*, 517 U.S. at 73.

Plaintiff has not shown the State Defendants waived immunity or that a congressional override strips the State Defendants of immunity.[1] Nor does he articulate any factually supported claim for prospective relief from the State Defendants.[2] Eleventh Amendment immunity thus bars his claims against them. *See Fouche v Jekyll Island State Park Auth.*, 713 F.2d 1518, 1520–23 (11th Cir. 1983).

---

[1] Defendant Champlin is considered part of the State because Plaintiff sued him in his official capacity and because Plaintiff's claims against him derive from actions he took in his official capacity. *See Watson v. Edelen*, 76 F. Supp. 3d 1332, n.20 (N.D. Fla. 2015) ("A suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes.") (citing *Will*, 491 U.S. at 71).

[2] Even if he did, Plaintiff could not pursue any injunctive claims against the State itself because the exception applies only to "suits against *state officers*" seeking such relief. *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (emphasis added).

### 2. Absolute Immunity

The State Defendants next claim Defendant Champlin is immune from suit based on absolute prosecutorial immunity. (Dkt. 37-1 at 6–8.)[3] "[A] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (internal quotation marks and citation omitted). "Such absolute immunity 'extends to a prosecutor's acts . . . which occur in the course of his role as an advocate for the State.'" *Id.* (quoting *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)). Numerous courts have expressly extended this protection to state assistant attorneys general. *See, e.g.*, *McConnell v. King*, 42 F.3d 471, 472 (8th Cir. 1994); *Pryzina v. Ley*, 813 F.2d 821, 823 (7th Cir. 1987); *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir. 1986).

Plaintiff broadly accuses Champlin of participating in a conspiracy against him by representing several state employees or entities named as defendants in his prior lawsuits. (Dkt. 1 at 9, 27, 55.)  Specifically,

---

[3] The State Defendants also argue Defendant Champlin is entitled to qualified immunity. (Dkt. 37-1 at 9–10.)  It appears they are right as the Court can see no constitutional violation let alone a violation of clearly established law.  But the Court need not decide that issue because it concludes he is entitled to absolute immunity.

5

Plaintiff takes issue with pleadings Champlin filed in opposition to his complaint and subsequent motions in those lawsuits. (*Id.*)[4] Champlin enjoys absolute immunity for his actions in those matters. *See Culbreath v. Reeves*, 2018 WL 9490973, at *6 (M.D. Ga. July 26, 2018) (collecting cases, noting "[c]ourts have found that government attorneys who are defending state government employees in civil actions are entitled to absolute immunity").

### 3.     Georgia Tort Claims Act

Finally, Defendants say Plaintiff's state law claims are barred by the Georgia Tort Claims Act. (Dkt. 37-1 at 10–15.) Specifically, they argue the Act provides them with immunity and that Plaintiff failed to follow its procedural requirements. (*Id.*)

First, under the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a). This part of the statute requires that a plaintiff "name as a

---

[4] Plaintiff says—without any factual support—that Champlin filed pleadings that not only misled the Court but amounted to "criminal confessions" to offenses such as obstruction of justice, perjury, and treason. (*Id.*)

6

party defendant only the state government entity for which the state officer or employee was acting and shall not name the state officer or employee individually." O.C.G.A. § 50-21-25(b). "The scope of th[is] exemption has been construed broadly" and exempts such state officers regardless of whether they acted with intent or malice. *Davis v. Standifer*, 621 S.E.2d 852, 855 (Ga. Ct. App. 2005). Plaintiff sued Champlin in his official capacity for actions he took in the course of his official duties. So, the GTCA bars his state law claims against Champlin.

In addition, under the GTCA the State has expressly retained its sovereign immunity over Plaintiff's claims. Under O.C.G.A. § 50-21-24, the State has retained its immunity over suits involving:

> (1) An act or omission by a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance, whether or not such statute, regulation, rule, or ordinance is valid; . . .
>
> (4) Legislative, judicial, quasi-judicial, or prosecutorial action or inaction; . . . [and]
>
> (7) Assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights.

*See also Tricoli v. Watts*, 783 S.E.2d 475, 478 (Ga. Ct. App. 2016) (noting Georgia RICO Act does not express a waiver of sovereign immunity and

7

that "the GTCA is the exclusive remedy for any torts committed by state officers or employees"). All of Plaintiff's claims fall within one of these exemptions, so they must be dismissed.

Finally, even if Plaintiff's claims were not substantively barred by the GTCA, his failure to follow the statute's procedural requirements warrants their dismissal. O.C.G.A. § 50-21-35 requires a plaintiff to:

> (1) cause process to be served upon the chief executive officer of the state government entity involved at his or her usual office address; and (2) cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services at his or her usual office address.

"The procedural components of the GTCA, like its other terms, are strictly construed." *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1360 (S.D. Ga. 2015). And failure to comply with the service provision "precludes compliance with the condition precedent to waiver of sovereign immunity and renders void [the plaintiff's] action[.]" *Id.* Plaintiff did not serve the chief executive officer of the State or the Attorney General's Office. His claims therefore fail.[5]

---

[5] Nor did Plaintiff comply with the GTCA's separate notice requirement. Prior to filing suit against a state government entity, the GTCA requires a plaintiff to provide the Georgia Department of Administrative Services and the entity being sued with an ante litem notice within 12 months of the date the plaintiff discovered or should have discovered his or her

**B.     The County Defendants**

Defendants Gwinnett County and Judge Laura Tate say Plaintiff's federal claims against them must be dismissed because he does not plead the required elements and because they are barred by Supreme Court precedent. (Dkt. 19-1 at 5–9.) They also argue that Plaintiff's state law claims are foreclosed by sovereign immunity. (*Id.*) Finally, they say Plaintiff's claims against Judge Tate are barred by judicial immunity and official immunity. (*Id.* at 9–11.)[6]

---

alleged loss. *See* O.C.G.A. §§ 50-21-26(a)(1)–(2). The GTCA plainly says "courts shall have no jurisdiction thereof unless and until a written notice of the claim has been timely presented to the state as provided in this subsection." O.C.G.A. § 50-21-26(a)(3). To prove compliance, the plaintiff must attach as exhibits to the complaint a copy of the notice and a certified mail or overnight delivery receipt. *See* O.C.G.A. § 50-21-26(a)(4). When a plaintiff fails to comply with the notice requirement, he or she has 30 days to comply after the State raises the issue by motion. *Id.* If the deficiency is not cured in 30 days, the "complaint shall be dismissed without prejudice." *Id.* Plaintiff did not comply with this provision and has not cured the deficiency since being raised by the State Defendants in their motion to dismiss.

[6] The County Defendants also argue that Plaintiff's claims are barred by *res judicata*. (Dkt. 19-1 at 4–5.) But they give this argument short shrift, failing to explain how Plaintiff's claims in this case overlap with his claims in a prior suit in state court. The Court declines to do Defendants' work for them by sifting through Plaintiff's lengthy (and nearly incomprehensible) complaints in both cases to identify their similarities—particularly because the Court dismisses Plaintiff's complaint on other grounds.

### 1. Failure to State a Claim

First, Defendants say Plaintiff's federal civil rights conspiracy claim fails because Plaintiff does not plead the required elements. (Dkt. 19-1 at 5 6.) A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Even so, a complaint offering mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. 555). Put another way, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This so-called "plausibility standard" is not a probability requirement. But the plaintiff must allege enough facts so

that it is reasonable to expect that discovery will lead to evidence supporting the claim. *Id.*

"Courts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Investments, Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action[.]" *Id.* (citation omitted). And where a complaint amounts to a "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension, dismissal is appropriate." *Prezzi v. Schelter*, 469 F.2d 691, 692 (2d. Cir. 1972); *see also Beck v. Bay Cty. Gov't*, 2018 WL 3030025, at *3 (N.D. Fla. May 1, 2018) (dismissing pro se complaint where "many of Plaintiff's allegations, or the inferences he draws from them, appear to be removed from reality").

To succeed on a 42 U.S.C. § 1985 civil rights conspiracy claim, a plaintiff must plausibly plead (1) "some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirator's action," *Dean v. Warren*, 12 F.4th 1248, 1257 (11th Cir. 2021), and (2) the

11

existence of a joint agreement between the defendants, *see Grappell v. Carvalho*, 739 F.2d 553, 557 (11th Cir. 1985). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* Plaintiff fails to plead any class-based discriminatory animus behind Defendants' alleged actions. So, his § 1985 claim does not survive.[7]

### 2. *Monell* and *Heck*

The County Defendants next argue that Plaintiff's federal claims against them are barred by the Supreme Court's decisions in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1972), and *Heck v. Humphrey*, 512 U.S. 477, 489 (1994). (*See* Dkt. 19-1 at 7–9.)

In *Monell*, the Supreme Court held that a "local government may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by its employees or agents." 426 U.S. at 692. "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Thus, for the County Defendants to be liable under § 1983, Plaintiff must prove that a County policy, practice, or custom was the cause of any alleged harm to

---

[7] Plaintiff's claims under 42 U.S.C. § 1986 fail for the same reason, as liability under that statute requires a "wrong[] conspired to be done, and mentioned in section 1985 of this title."

12

him. *See Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985). Plaintiff does not allege any policy, practice, or custom of the County caused the deprivation of his constitutional rights, so *Monell* bars his claims.

Plaintiff's federal claims against the County Defendants for damages are also barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). In that case, the Supreme Court held that a federal claim for damages attributable to an unconstitutional conviction or sentence is barred until the conviction or sentence has been overturned. *Id.* Plaintiff does not allege his conviction has been overturned; in fact, that is the exact relief he asks from this Court.

Plaintiff's federal claims against the County Defendants are precluded by *Monell* and *Heck*.

### 3. Sovereign Immunity

Next, the County Defendants claim Plaintiff's state law claims must fail because they are entitled to sovereign immunity. Under the Georgia Constitution, counties in Georgia enjoy sovereign immunity and can be sued only if they have waived their immunity. *See McBrayer v. Scarbrough*, 874 S.E.2d 146, 148 (Ga. Ct. App. 2022). A plaintiff must

plead waiver. *See Young v. Johnson*, 860 S.E.2d 82, 83 (Ga. Ct. App. 2021). Plaintiff does not allege the County Defendants waived sovereign immunity, so his claims are barred. *See Gwinnett Cty. v. Ashby*, 842 S.E.2d 70, 74 (Ga. Ct. App. 2020) (trial court erred by not dismissing case where plaintiff did not allege county waived its sovereign immunity).

### 4. Judicial Immunity

Finally, the County Defendants say Plaintiff's claims against Judge Tate must be dismissed because she is entitled to judicial immunity. "Judges are entitled to absolute immunity from damages for those acts taken while they are acting in their judicial capacity unless that acted in the absence of all jurisdiction." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005). "This immunity applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Plaintiff's claims against Judge Tate—while hard to discern—appear to be based on acts she undertook in her judicial capacity. (Dkt. 1 at 31 (alleging Judge Tate knew Plaintiff had not committed a crime, committed jury and evidentiary errors, and did not provide security in the courtroom).) And

Plaintiff does not allege Judge Tate lacked all jurisdiction over him.[8] His claims against Judge Tate are thus barred by judicial immunity.[9]

In sum, all of Plaintiff's claims against the County must be dismissed.[10]

### C. Defendant Weed

That leaves only Plaintiff's claims against Defendant Weed. Weed says Plaintiff's claims against him must be dismissed because Plaintiff failed to serve him with a copy of the complaint. (Dkt. 18 at 1.) Plaintiff says he adequately served Weed "at her place of abode with someone of

---

[8] Plaintiff for the first time in one of his responses to Defendants' motions appears to claim the Gwinnett court lacked jurisdiction when he entered his plea. (Dkt. 34 at 2.) But he did not allege that court's lack of jurisdiction in his complaint, so the Court will not consider this argument. *See Mitchell v. Thompson*, 564 F. App'x 452, 458 (11th Cir. 2014) (court will not consider new allegations not included in complaint in response to motion to dismiss).

[9] The County Defendants also argue Judge Tate is entitled to official immunity and qualified immunity. (Dkt. 19-1 at 10–13.) Because Plaintiff's claims against her all derive from acts she took in her official capacity—and because the Court concludes she is entitled to judicial immunity from those claims—it need not decide these issues.

[10] The County Defendants—like the State Defendants—also say Plaintiff's state law claims must be dismissed because of his failure to comply with the GTCA's procedural requirements. The Court agrees for the reasons discussed above. *See supra*, Section II.A.3.

15

suitable age and discretion who resides there" and asks for a default judgment. (Dkt. 26 at 1.) The Sheriff's notice of service Plaintiff filed in support of that allegation, however, says the sheriff served Defendant Weed at the Gwinnett County Law Office by leaving a copy of the summons with a "legal manager." (Dkt. 26 at 4.) It also indicates Defendant Weed no longer works there. (*Id.*) Plaintiff also says it might be illegal for him to "just serve [Defendant Weed] at her home." (*Id.* at 1.) It appears Plaintiff does not mean Defendant Weed's home when he refers to her "abode" but rather meant her (former) office.

Federal Rule of Civil Procedure 4(e) governs service on individual defendants. *See Horton v. Maldonado*, 2014 WL 6629743, at *3 (N.D. Ga. Nov. 21, 2014). Rule 4(e) says a defendant may be served by—among other things—"following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e). Georgia law requires service to be made upon the defendant personally, or by leaving copies of the summons and complaint at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion who resides there, or by delivering a copy of the summons and

complaint to an agent authorized by appointment or law to receive service of process. O.C.G.A. § 9-11-4(e)(7). When "service of process is challenged, the plaintiff must bear the burden of establishing its validity." *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013).

As stated above, Plaintiff tried to serve Weed by leaving a copy of the complaint with an employee of Weed's previous employer. (Dkt. 18-1.) But "[n]o provision is made for leaving a copy [of the complaint] at the individual's usual place of business or with the individual's employer." *Melton v. Wiley*, 262 F. App'x 921, 923 (11th Cir. 2008). And Plaintiff has not alleged that the employee with whom he left the complaint was Weed's "agent authorized by appointment or by law to receive service of process." In fact, Weed expressly *did not* authorize the employee to accept service on his behalf. (Dkt. 18-2.) Plaintiff's claims against Weed must be dismissed for improper service. *See Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when the defendant has not been served.").[11]

---

[11] Dismissal for improper service operates without prejudice. *See Marcus v. Postmaster Gen., U.S. Postal Serv. Se. Area*, 461 F. App'x 820, 823 (11th Cir. 2011) (citing Fed. R. Civ. P. 4(m)). Plaintiff says he "will personally

17

### III. Plaintiff's Motions to Amend

Plaintiff has filed four separate motions to amend his complaint. While difficult to follow, it appears he asks the Court to allow him to raise additional allegations that largely appear to mirror the claims he has already made or—in some instances—to assert new nonsensical facts and arguments. (*See generally* Dkts. 33, 63, 78, 80.) Leave to amend is "not an automatic right." Fed. R. Civ. P. 15(a). "A district court may, in the exercise of its inherent power to manage the conduct of litigation before it, deny [leave to amend] where there is substantial ground for doing so, such as . . . 'futility of amendment.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quotation omitted). Plaintiff's proposed amendments raise the same sort of "labyrinthian prolixity of unrelated and vituperative charges that def[y] comprehension" as his first two complaints. *See Prezzi*, 469 F.2d at 692. And they do not cure any of the

---

and joyfully serve Weed via the Gwinnett County Chairwoman who is an agent authorized by appointment of [] law to receive service of process." (Dkt. 26 at 1.) Whether Plaintiff refiles suit against Weed (and properly serves him) is his prerogative. But the Court notes Plaintiff's claims against Weed, like those against the other Defendants, appear similarly meritless and detached from reality. And the Court will not hesitate to sanction Plaintiff for further repetitive, harassing filings that contain fraudulent allegations of fact.

deficiencies identified by the Court in dismissing those two complaints.[12] The Court denies Plaintiff's motions.

## IV. Conclusion

The Court **GRANTS** Defendant Weed's Motion to Dismiss Plaintiff's Complaint (Dkt. 18), the County Defendants' Motion to Dismiss Plaintiff's Complaint (Dkt. 19), the County Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 23), and the State Defendants' Motion to Dismiss (Dkt. 37). The Court **DENIES** Plaintiff's Motions to Amend His Complaint (Dkt. 33, 63, 80) and his Motion for Leave to Amend His Complaint (Dkt. 78).

The Court **DENIES AS MOOT** the remaining pending motions (Dkts. 20, 27, 31, 38, 41, 53, 59, 61, 71, 79.)

---

[12] Plaintiff seeks to amend his complaint in part to raise an allegation that the Gwinnett court lacked jurisdiction over him when he entered his guilty plea. (Dkt. 33 at 8.) Specifically, he cites Georgia's venue statute and says the court lacked jurisdiction because he was never in Georgia when he was "a USAF Security Policeman." (*Id.*) For one, the civil venue statute has nothing to do with Defendant's criminal conviction. And in any event, Defendant's plea documents show he falsely claimed to be a United States Air Force officer (and presented a fake badge) to an officer of the Gwinnett County Police Department while he was in Gwinnett County. (Dkt. 37-2 at 7.) *See La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (in analyzing complaint, court can consider documents "central to or referenced in the complaint").

19

**SO ORDERED** this 17th day of February, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE